# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH RODRIGUEZ MONTGOMERY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>E. ARNOLD,<br><br>　　　　Respondent. | Case No. SACV 15-1341-CJC (JEM)<br><br>AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

The Court submits this Amended Report and Recommendation to the Honorable Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. Section 636 and General Order 05-07 of the United States District Court for the Central District of California.

## **INTRODUCTION**

On August 24, 2015, Joseph Rodriguez Montgomery ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition" or "Pet."). On September 21, 2015, Respondent filed an Answer. Petitioner did not file a Reply.

On July 8, 2016, the Court issued a Report and Recommendation ("R&R") recommending that the Petition denied. However, on December 9, 2016, the Court ordered

the parties to file supplemental briefs addressing the impact of People v. Sanchez, 63 Cal.4th 665 (2016), on this case.

On January 6, 2017, Respondent filed a supplemental brief. Petitioner did not file a supplemental brief.

The matter is ready for decision. For the reasons set forth below, the Court recommends that the Petition be denied.

## PRIOR PROCEEDINGS

On January 31, 2013, an Orange County Superior Court jury convicted Petitioner of second degree robbery (Cal. Penal Code §§ 211/212.5(c); count 1) and attempted second degree robbery (Cal. Penal Code §§ 664(a), 211/212.5(c); count 2). The related gang allegations (Cal. Penal Code § 186.22(b)(1)) were found true. Petitioner was sentenced to a total term of thirteen years in state prison. (Respondent's Lodgment ("Lodg.") 1 at 62, 418-19, 467-68.)[1]

Petitioner appealed the judgment to the California Court of Appeal (Lodg. 3), and his conviction was affirmed in an unpublished opinion on September 16, 2014 (Lodg. 5). Petitioner filed a petition for review in the California Supreme Court (Lodg. 6), which was denied summarily on November 25, 2014 (Lodg. 7).

## SUMMARY OF EVIDENCE AT TRIAL

Based on its independent review of the record, the Court adopts the following factual summary from the California Court of Appeal's unpublished opinion as a fair and accurate summary of the evidence presented at trial that is relevant to Petitioner's claim:

> Around midnight on November 6, 2011, Aaron Anguiano and his cousin, Christopher Martinez, were walking to Anguiano's car on Harbor Boulevard near 17th Street in Santa Ana after buying a taco at a taco stand.

---

[1] The Clerk's Transcript and Reporter's Transcript have been lodged as Respondent's Lodgments 1 and 2, respectively.

A gray Suburban pulled into a parking lot in front of them, partially blocking the sidewalk, and three young men got out of the Suburban and approached them. The men asked, "Where are you guys from?" One of them grabbed Anguiano's pockets and said, "What do you have on you[,]" and "Give me all your shit." Anguiano replied, "Hey, I don't have anything. I'm not looking for any trouble."

One of the men had a knife, and threatened Anguiano with it. Angu[ia]no testified he was "concerned for [his] own safety, [and that of his] cousin's," and that his "adrenaline was kind of rushing." He showed the men his empty wallet. He also showed them his cell phone and said, "Just go ahead and take it." The men grabbed Anguiano's cell phone and car keys, hit him in the face, and told him to "turn and walk." Anguiano and Martinez walked to a motel and called the police.

A few minutes later, police responding to Anguiano's call stopped Montgomery, Garcia, and Barrera in a gray Suburban. Anguiano's cell phone was on the back seat of the Surburban. Anguiano's keys were in Barrera's pocket. A knife was found between two poles of a chain link fence about 75 yards from the parked Suburban.

At the scene, Anguiano identified Garcia and Barrera as two of the three individuals that robbed him. At trial, Anguiano identified Garcia as the man with the knife and the person who hit him, and he testified the knife found near the Suburban looked like the one used in the robbery. He testified Barrera was the person who demanded he turn over his belongings. Anguiano also identified Montgomery as one of the robbers, although he was not 100 percent sure, and he said Montgomery stood back and looked around while Garcia and Barrera were taking his property.

Santa Ana Police Detective Jorge Lopez testified as an expert on criminal street gangs. He opined 17th Street was a criminal street gang in Santa Ana with about 150 members in November 2011.

Detective Lopez explained the culture of criminal street gangs in general and 17th Street in particular. Like many other gangs in Santa Ana, 17th Street started as a 1950's car club, which slowly morphed into an association of people whose primary activity is the commission of crimes. At the time of the instant crimes, the primary activities of 17th Street gang members were firearm possession and vehicle thefts.

Criminal street gangs often claim a particular area of a city as their "turf." Seventeenth Street's claimed territory is south of the 22 Freeway, north of Hazard Avenue, east of Euclid Street, and west of Newhope Street, and includes portions of Garden Grove. Gangs also develop alliances and rivalries with other criminal street gangs. The Hard Times street gang is a 17th Street rival. Members of 17th Street use derogatory names such as "Hard Tacos" for Hard Times's gang members. The robbery of Martinez and Anguiano took place in the Hard Times's territory, about half a mile from 17th Street's claimed territory.

Detective Lopez explained criminal street gangs use respect as a status mobility system predicated on their commission of violent crimes. Striving for respect fosters antisocial behavior, which includes committing crimes and instilling fear among nongang members living in the gang's claimed territory. Instilling fear in the community helps the gangs commit crimes because people are reluctant to cooperate with authorities for fear of retaliation. Violent crimes increase the individual gang member's status, instill fear in the community and elevate the whole gang's status, and individual gang members believe status and respect are based on the fear engendered by their crimes.

A gang's status also keeps rival gangs from invading their territory on account of their reputation and fear of being assaulted. If a gang is perceived as weak, a rival will claim their territory. For instance, maintaining control over certain areas associated with narcotics sales may be particularly important to gangs as a revenue source for the gang. At the same time, committing crimes in a rival's territory elevates the other gang's status.

"Putting in work" for a gang means committing crimes for the benefit of the gang. Committing gang-related crimes elevates the individual gang member's status in his or her gang, demonstrates dedication and commitment to the gang, and builds trust with other members of the gang. One of the ways new members join the gang is by "criming in" or committing a crime for the gang, although new members may also join by enduring an assault by gang members, "jumping in," or by "walking in" when they are just accepted due to familial relations.

Gang members commit crimes with other gang members because they can trust them not to inform the police. "Backing up" means supporting fellow gang members by assisting in crimes to provide moral support. There are repercussions to gang members who do not backup fellow gang members. As gang members become more seasoned, they often take on more advisory roles and allow the newer recruits to commit crimes.

Detective Lopez opined Montgomery was a well-entrenched gang member because he had claimed the gang numerous times when contacted by the police, had several 17th Street tattoos, and claimed the gang moniker "Suspect." Detective Lopez also stated Barrera was at least an associate, if not a member of 17th Street, and that Garcia was either a new associate of 17th Street or "criming in" to the gang by committing the instant robbery and attempted robbery. Detective Lopez found it significant that Montgomery, the most seasoned gang member, kept watch while

Barrera and Garcia dealt with the robbery victims. Detective Lopez stated this fact demonstrated Montgomery, a known 17th Street gang member, trusted Barrera and Garcia. Garcia's violent behavior with the knife may have been "criming in" to 17th Street, and it shows he is committed to the gang, possibly enhancing his status from an associate to a member.

Based upon a hypothetical mirroring the evidence adduced at trial, Detective Lopez opined the crimes were committed for the benefit of and in association with a criminal street gang. He explained 17th Street received the tangible benefits of the phone and keys. They also received the intangible benefits by committing a violent crime in rival gang territory, and earning respect in their gang and enhancing their reputation in the community. Also, an associate criming into the gang benefits the gang by adding another member.

Finally, Detective Lopez explained the crimes were committed in association with a criminal street gang because they involved at least one gang member and two associates working in conjunction and operating together. One was the lookout, another held the knife, and the third patted the victims down and took their property. This conduct also furthered and promoted criminal conduct by gang members. (Lodg. 5 at 2-5.)

**PETITIONER'S CONTENTION**

The evidence was insufficient to support the jury's true findings on the gang allegations. (Pet. at 5, 32-47.)[2]

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's consideration of Petitioner's cognizable federal claims. 28 U.S.C. § 2254(d), as amended by AEDPA, states:

---

[2] The Court refers to the pages of the Petition as numbered by the Court's CM/ECF system.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "A Supreme Court decision is not clearly established law under § 2254(d)(1) unless it 'squarely addresses the issue' in the case before the state court [citation omitted] or 'establishes a legal principle that "clearly extends"' to the case before the state court." Andrews v. Davis, 866 F.3d 994, 1018 (9th Cir. 2017) (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008), and Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008)); see also Carey v. Musladin, 549 U.S. 70, 76-77 (2006). "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). "Section 2254(d)(1) . . . does not require state courts to extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error." Id. "A principle is clearly established law governing the case 'if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question.'" Andrews, 866 F.3d at 1018 (quoting White, 134 S. Ct. at 1706-07).

A federal habeas court may grant relief under the "contrary to" clause if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"

or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of a particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). The "unreasonable application" clause requires that the state court decision be more than "incorrect or erroneous." Andrews, 866 F.3d at 1018. "The pivotal question is whether the state court's application of [the law] was unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011).

A state court need not cite Supreme Court precedent when resolving a habeas corpus claim. See Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. Id.

A state court's factual determination is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Rather, § 2254(d)(2) requires federal habeas courts to "accord the state trial court substantial deference." Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015). Where "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood, 558 U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006)). However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review," and "does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

In deciding a habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination. Rather, § 2254(d) "sets forth a 'highly deferential standard . . . , which demands that state-court decisions be given the benefit of the doubt.'" Andrews, 866 F.3d at 1018 (quoting Cullen v. Pinholster, 563 U.S. 170, 181

(2011)).  While not a complete bar on the relitigation of claims already rejected in state court proceedings, § 2254(d) merely "'preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court precedent]' and 'goes no further.'"  Andrews, 866 F.3d at 1018-19 (quoting Richter, 562 U.S. at 102).  "[E]ven a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."  Richter, 562 U.S. at 102.

The federal habeas court "looks through" a state court's silent decision to the last reasoned decision of a lower state court, and applies the AEDPA standard to that decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground.").

Petitioner presented his sufficiency of the evidence claim to the state courts on direct appeal.  (Lodg. 3, 6).  The California Court of Appeal denied the claim in a reasoned decision (Lodg. 5), and the California Supreme Court denied it without comment or citation to authority (Lodg. 7).  Thus, the Court looks through the California Supreme Court's silent denial to the California Court of Appeal's reasoned decision and applies the AEDPA standards.  See Ylst, 501 U.S. at 803.

## DISCUSSION

**PETITIONER'S SUFFICIENCY OF THE EVIDENCE CLAIM DOES NOT WARRANT FEDERAL HABEAS RELIEF**

Petitioner contends that the evidence was insufficient to support the jury's true findings on the gang enhancements.  (Pet. at 5, 32-47.)  For the reasons set forth below, the California Court of Appeal's rejection of this claim in a reasoned decision was not contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

///

///

### A. Applicable Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A habeas petitioner challenging the sufficiency of the evidence to support his or her state criminal conviction may obtain relief only if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979).

A federal court collaterally reviewing a state court conviction does not determine whether *it* is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original); see also Wright v. West, 505 U.S. 277, 296-97 (1992) (plurality opinion). The Jackson standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." Schlup v. Delo, 513 U.S. 298, 330 (1995).

The jury resolves conflicts in testimony, weighs the evidence, and draws inferences from basic facts. Jackson, 443 U.S. at 319. "[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup, 513 U.S. at 330; Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (reviewing court must respect the exclusive province of the trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts). A federal habeas court faced with a record supporting conflicting inferences "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326; see also McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam); West, 505 U.S. at 296-97.

"Circumstantial evidence and reasonable inferences drawn from it may be sufficient to sustain a conviction." United States v. Jackson, 72 F.3d 1370, 1381 (9th Cir. 1995).

Although sufficiency of the evidence review is grounded in the Fourteenth Amendment, the federal court must refer to the substantive elements of the criminal offense as defined by state law, and must look to state law to determine what evidence is necessary to convict on the crime charged. See Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005).

Under AEDPA, the federal habeas court's inquiry is "even more limited"; the court "ask[s] only whether the state court's decision was contrary to or reflected an unreasonable application of Jackson to the facts of a particular case." Emery v. Clark, 643 F.3d 1210, 1213-14 (9th Cir. 2011); see also McDaniel, 558 U.S. at 132 (noting the "deferential review that Jackson and § 2254(d)(1) demand").

### B. California Court of Appeal's Decision

On direct appeal, Petitioner argued that the evidence was insufficient to support the gang enhancements because there was no evidence his crimes were committed for the benefit of the 17th Street gang, and the contrary opinion of the prosecution's gang expert Detective Lopez was just speculation.

Applying the Jackson standard, the California Court of Appeal rejected this claim as follows:

> Penal Code section 186.22, subdivision (b) imposes additional or alternative punishments for felony offenses committed "for the benefit of, at the direction of, or in association with any criminal street gang," and "to promote, further, or assist in any criminal conduct by gang members." (Id., subd. (b)(1).) Collateral effects of the crime, including respect or fear of the gang and revenge, have all been found to constitute a "benefit" to the gang. (See People v. Gardeley (1996) 14 Cal.4th 605, 619; People v. Olguin (1994) 31 Cal. App. 4th 1355, 1384.) A specific intent to promote, further, or assist in any criminal conduct by gang members is required, but

a specific intent to benefit the gang is not. (People v. Morales (2003) 112 Cal. App. 4th 1176 (Morales).)

Morales is particularly instructive. In that case, the defendant and two fellow gang members committed a robbery and other offenses. Based upon a hypothetical question, the gang expert testified the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang because "they involved three gang members acting in association with each other. The gang provided 'a ready-made manpower pool . . . .' That is, one gang member would choose to commit a crime in association with other gang members because he could count on their loyalty. They would 'watch his back . . . .'" "The crime would benefit the individual gang members with notoriety among the gang, and the gang with notoriety among rival gang members and the general public." (Morales, supra, 112 Cal. App. 4th at p.1197.)

Morales rejected the defendant's argument that there was insufficient evidence that he committed the offenses to benefit his gang, and instead noted the gang expert's focus was on "a crime committed, not just by a gang member, but by several gang members, acting in association with each other. Also, [the expert] did not testify that such a crime necessarily would benefit the gang, merely that it would be committed either for the benefit of, or at the direction of, or in association with the gang." (Morales, supra, 112 Cal. App. 4th at p.1197.)

Morales also rejected the defendant's argument that reliance on evidence one gang member committed a crime in association with other gang members is circular. "Arguably, such evidence alone would be insufficient, even when supported by expert opinion, to show that a crime was committed for the benefit of a gang. The crucial element, however, requires that the crime be committed (1) for the benefit of, (2) at the direction of, or (3) in association with a gang. Thus, the typical close case is one in which one gang member, acting alone, commits a crime. Admittedly, it is

conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang. Here, however, there was no evidence of this. Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." (Morales, supra, 112 Cal. App. 4th at p.1198.)

Finally, Morales set aside the defendant's argument there was insufficient evidence of specific intent, as opposed to benefit, direction or association. "Again, specific intent to benefit the gang is not required. What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members . . . .' Here, there was evidence that defendant intended to commit robberies, that he intended to commit them in association with Flores and Moreno, and that he knew that Flores and Moreno were members of his gang . . . . It was fairly inferable that he intended to assist criminal conduct by his fellow gang members." (Morales, supra, 112 Cal. App. 4th at p.1198.)

All of the same can be said in this case. Here, Montgomery, a known 17th Street gang member, committed robbery and attempted robbery with two associates of the gang, Garcia and Barrera. Based upon a hypothetical, Detective Lopez testified the crimes were committed for the benefit of and in association with 17th Street, because they involved at least one member and two associates working in conjunction and operating together. Seventeenth Street provided a ready-made manpower pool of members or associates that could be trusted not to inform the police and to provide backup. In addition, crimes would benefit Montgomery, Garcia, and Barrera with notoriety within 17th Street. And the crimes would benefit 17th Street with notoriety in the community, and among rival gang members, particularly since the crimes were committed in rival gang territory.

So we reject Montgomery's argument there was insufficient evidence that he committed the offenses to benefit 17th Street. Here, as in Morales, the gang expert's

focus was on crimes committed by several gang members or associates, acting in association with each other. Also here, as in Morales, Detective Lopez testified the crimes were committed for the benefit of and in association with 17th Street, not just for the benefit of 17th Street. Admittedly, Montgomery, Barrera, and Garcia could have been on a frolic and detour unrelated to 17th Street, but we note their crimes in this case started with the classic gang challenge, "Where are you guys from?"

And, to the extent Montgomery argues there was insufficient evidence of specific intent, we reiterate specific intent to benefit 17th Street is not required. "What is required is the 'specific intent to promote, further, or assist in any criminal conduct by gang members . . . .'" (Morales, supra, 112 Cal. App. 4th at p.1198.) "In sum, if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (People v. Albillar (2010) 51 Cal.4th 47, 68.)

Here, there was evidence Montgomery intended to commit the robbery and attempted robbery, in association with Barrera and Garcia, and he knew they were members or associates of 17th Street. Thus, the jury could reasonably infer Montgomery had the specific intent "to promote, further, or assist in any criminal conduct by gang members . . . ." (Pen. Code, § 186.22, subd. (b)(1).)

We are also not persuaded by Montgomery's argument a gang expert's opinion must be supported by additional evidence demonstrating the crime was committed to benefit a gang. (See People v. Ochoa (2009) 179 Cal. App. 4th 650; People v. Ramon (2009) 175 Cal. App. 4th 843; People v. Albarran (2007) 149 Cal. App. 4th 214; In re Frank S. (2006) 141 Cal. App. 4th 1192.) The California Supreme Court has more recently held: "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the

Penal Code section 186.22, subdivision (b)(1), gang enhancement. [Citation.]" (People v. Vang (2011) 52 Cal.4th 1038, 1048.)

In any event, all of these cases are distinguishable on other grounds. People v. Ochoa, supra, 179 Cal. App. 4th 650 and In re Frank S., supra, 141 Cal. App. 4th 1192 both involved crimes committed by one gang member, acting alone, not multiple gang members acting together. In People v. Ramon, supra, 175 Cal. App. 4th at page 851 the gang expert "simply informed the jury of how he felt the case should be resolved," and, not surprisingly, the appellate court held this to be an improper expert opinion on the ultimate issue to be decided. No such improper opinion was given in this case. And People v. Albarran, supra, 149 Cal. App. 4th at page 228 involved neither the sufficiency of the expert's opinion nor a substantial evidence issue. Instead, the appellate court held the gang evidence was irrelevant to the underlying charges and extraordinarily prejudicial.

Montgomery's reliance on People v. Ferraez (2003) 112 Cal. App. 4th 925 (Ferraez ), is also misplaced. In Ferraez, the defendant challenged the sufficiency of the evidence to prove he was guilty of street terrorism, the substantive gang crime described in Penal Code section 186.22, subdivision (a). While it is true the appellate court stated, in passing, "[u]ndoubtedly, the expert's testimony alone would not have been sufficient to find the drug offense was gang related[,]" (Ferraez, supra, 112 Cal. App. 4th at p. 931) the appellate court was not discussing the sufficiency of the evidence to prove the defendant committed the drug offense for the benefit of, at the direction of, or in association with the specific intent to "promote, further, or assist in criminal conduct" by gang members. (Pen. Code, § 186.22, subd. (b)(1).) Plus, the appellate court went on to note that the gang expert's opinion was "coupled with other evidence from which the jury could reasonably infer the crime was gang related." (Ferraez, supra, at p. 931.) Here, the gang expert's testimony was

        bolstered by evidence of Montgomery's long association with 17th Street and the
gang hit-up that started the robbery.

(Lodg. 5 at 6-10.)

      **C.     Analysis of the Sufficiency of the Evidence**

      Viewing the evidence presented in the light most favorable to the prosecution and presuming that the jury resolved all conflicting inferences from the evidence against Petitioner, a rational juror "could reasonably have found beyond a reasonable doubt" that Petitioner's crimes were committed for the benefit of and in association with a criminal street gang and with the intent to promote, further, or assist in criminal conduct by his fellow gang members. See Jackson, 443 U.S. at 325-26.

      As the California Court of Appeal held, it was not necessary that Petitioner had the specific intent to benefit 17th Street. (Lodg. 5 at 9.) It was only required that he intended to commit the robbery and attempted robbery in association with Barrera and Garcia, and he knew they were members or associates of 17th Street. (Id.) There was ample evidence to support such a finding. Petitioner was a known 17th Street gang member. He and two of his gang associates, Barrera and Garcia, committed robbery and attempted robbery in rival gang territory, after issuing a typical gang challenge, "Where are you guys from?" Moreover, the gang expert testified that the crimes were committed for the benefit of and in association with 17th Street because the three perpetrators were trusted fellow gang members working together, the crimes also would benefit the perpetrators with notoriety within 17th Street, and the crimes would bring notoriety to 17th Street in the community, especially since they were committed in rival gang territory.

      The gang expert's testimony, along with evidence of Petitioner's long association with 17th Street, his fellow gang associates' participation in the crimes, and the gang challenge at the beginning of the incident constitute sufficient evidence under California law to support the gang enhancements. In light of the "sharply limited nature of constitutional sufficiency review" and application of the "additional layer of deference" required by AEDPA, the state

courts' rejection of this claim was not objectively unreasonable. Thus, Petitioner is not entitled to habeas relief.

### D. Impact of People v. Sanchez

As stated above, after the initial R&R was filed the Court asked the parties to address the impact of People v. Sanchez, 63 Cal.4th 665 (2016), on Petitioner's claim. Sanchez addressed the admissibility of evidence regarding gang testimony and held that a Confrontation Clause violation may occur when an expert relies on testimonial hearsay and treats it as true and accurate for purposes of formulating his expert opinion, absent a showing of unavailability and a prior opportunity for cross-examination. Id. at 686.

Petitioner's sole claim in the Petition challenges the sufficiency of the evidence regarding whether Petitioner's substantive offenses of robbery were committed for gang purposes under Jackson. Petitioner does not raise any issue regarding the admissibility of evidence and, therefore, Sanchez does not impact Petitioner's claim. Because "'a reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously," McDaniel v. Brown, 558 U.S. 120, 131 (2010) (per curiam) (quoting Lockhart v. Nelson, 488 U.S. 33, 41 (1988)), it is irrelevant whether the gang expert's testimony was inadmissible. Thus, even if the prosecution's gang expert relied on improper hearsay in formulating his opinion, his opinion and the basis for it would still be considered in determining whether the evidence was sufficient to support the gang enhancement under Jackson.

In sum, Sanchez has no bearing on Petitioner's sufficiency of the evidence claim.[3]

///
///
///
///

---

[3] It would be futile to stay this case in order to allow Petitioner to attempt to exhaust a Confrontation Clause claim because it would be procedurally barred and untimely for the reasons set forth in Respondent's Supplemental Briefing.

**RECOMMENDATION**

THE COURT, THEREFORE, RECOMMENDS that the District Court issue an Order: (1) accepting this Amended Report and Recommendation; (2) denying the Petition; and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: October 6, 2017                               */s/ John E. McDermott*
                                                                      JOHN E. MCDERMOTT
                                          UNITED STATES MAGISTRATE JUDGE